PATRICIA J. HUNTER, Plaintiff-Appellee, v. WAYNE VERCELLOTTI *et al.*, Defendants-Appellants.

Third District No. 3—94—0669

Opinion filed April 20, 1995.—Rehearing denied May 25, 1995.

Timothy J. Rathbun and Michael R. Lucas, both of McKeown Law Offices, of Joliet, for appellants.

William Fitzpatrick, of Callahan, Fitzpatrick, Lokoma & McGlynn, of Oak Lawn, and Daniel T. Hull, Jr., of Birmingham, Alabama, for appellee.

JUSTICE STOUDER delivered the opinion of the court:

This is an appeal by defendants, Wayne Vercellotti, Barbara Vercellotti, Bernice Friedrich and Friedrich Binding & Embossing Co., d/b/a Friedrich, Inc., from a grant of partial summary judgment entered in favor of the plaintiff, Patricia J. Hunter. The circuit court made a finding that there was no just reason for delaying either enforcement or appeal pursuant to Supreme Court Rule 304(a) (Official Reports Advance Sheet No. 26 (December 22, 1993), R. 304(a), eff. February 1, 1994). We affirm.

The record shows the plaintiff was an employee of Friedrich, Inc., for 34 years. During that time, through purchases and gifts, she acquired 77 shares of the company's stock. Following the death of the company's founder in 1986, differences arose between the plaintiff and the other shareholders of this closely held corporation. Attempts to negotiate the reacquisition of the plaintiff's shares proved fruitless.

In August 1993, the plaintiff filed a complaint alleging "oppressive" conduct on the part of the defendants and breach of fiduciary duty. She sought, *inter alia*, punitive and compensatory damages. Meantime, on October 20, 1993, the corporate defendant mailed to all shareholders, including the plaintiff, notice of a special shareholders' meeting to be held November 15, 1993. The meeting was called to discuss the proposed sale of substantially all the corporation's assets to the H.C. Miller Company. Included in the notice was a copy of the statutory provisions concerning a shareholder's right to dissent. (See

805 ILCS 5/11.65, 11.70 (West 1992).) The plaintiff and her attorney attended this meeting, at which a majority voted in favor of the sale. The plaintiff voted against the acquisition.

Subsequently, the circuit court denied the plaintiff's motion for a temporary restraining order. The sale of the company was completed on December 3, 1993. On December 9, 1993, the plaintiff presented a formal written demand for payment to her of the fair market value of her shares as of December 3, 1993. The notice alleged that the information supplied to her prior to the November 15, 1993, meeting was insufficient to allow her to objectively vote on the transaction or to decide whether to exercise dissenter's rights.

On December 29, 1993, the corporation notified the plaintiff that it estimated the fair value of her shares to be $1,205 per share or a total of $92,785. On January 26, 1994, the plaintiff gave notice that she disagreed with the corporation's estimate. She claimed the shares were worth a total of $269,000. Prior to this, on January 12, 1994, the plaintiff filed a first amended complaint. The complaint alleged "oppressive conduct" (count I), breach of fiduciary duty (count II) and misrepresentation and fraud (count III). On March 10, 1994, the defendants filed a counterclaim in the plaintiff's action requesting a fair value determination by the circuit court.

On April 4, 1994, the circuit court denied the defendants' motion to strike plaintiff's first amended complaint as to counts I and III. However, the court granted the motion as to count II, with leave for the plaintiff to file an amended count. On April 28, 1994, the plaintiff filed an amended count II. In addition, she filed a new count IV. Therein, the plaintiff sought an order that within 10 days of delivery of her stock certificates, the company was to pay the amount it estimated to be the value of her shares. Additionally, the plaintiff requested the court make a valuation determination and order the company to pay the plaintiff the difference.

The plaintiff moved for summary judgment on count IV. On August 30, 1994, the circuit court granted the motion and entered a judgment in favor of the plaintiff for $92,785 plus interest from December 3, 1993. The judgment was conditioned on the plaintiff delivering her shares to the corporation within 21 days.

On appeal, the defendants argue the circuit court erred in granting the plaintiff partial summary judgment. The defendants contend there is no authority under the procedures set forth in section 11.70 of the Business Corporation Act of 1983 (805 ILCS 5/11.70 (West 1992)) for a circuit court to enter a judgment awarding a dissenting shareholder the amount of the corporation's *estimated* fair value, prior to a final determination by the court of the fair market value of

the shareholder's shares. In other words, there is no authority for a "preliminary" determination of fair value.

The defendants maintain that section 11.70 contemplates the corporation will notify the dissenting shareholder of its opinion as to the estimated value of the shares, along with a commitment to pay that amount on transmittal of the shares to the corporation. Thereafter, the dissenting shareholder delivers her share certificates (or other evidence of ownership) to the corporation and the corporation in turn pays the estimated fair value to the dissenting shareholder. Subsequently, in light of any dispute over valuation, the circuit court is empowered to enter a judgment for the amount the court's determination of fair market value exceeds that of the corporation's estimate. (See 805 ILCS 5/11.70(h) (West 1992).) Thus, according to the defendants there exists no authority under the statute for entry of a judgment prior to a determination of fair market value by the court. In the instant case, the court has yet to make such a determination.

In addition, the defendants argue questions of fact remain which render entry of partial summary judgment improper. For example, the defendants argue that questions remain as to whether the plaintiff followed the statutory procedures requisite to being considered a dissenting shareholder. Also, a question of fact remains as to the fair market value of the plaintiff's shares. The defendants point out the court may determine the shares are worth less than the value estimated by the corporation, and therefore the plaintiff would not be entitled to the full amount awarded in the "preliminary" judgment.

■ This court's function in interpreting a statutory provision is to ascertain and give effect to the legislative intent underlying the statute. (*Rodgers v. Department of Employment Security* (1989), 186 Ill. App. 3d 194, 542 N.E.2d 168.) In order to ascertain the legislative intent underlying a statute, we first look to the statutory language and examine the language as a whole, considering each section in connection with every other section of a given act. (*In re Petition for Declaration of Sale in Error* (1994), 256 Ill. App. 3d 159, 628 N.E.2d 1182.) Summary judgment is appropriate where the pleadings, depositions and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 1992).

■ Looking to the procedures set forth in section 11.70(c), the section provides that after the dissenting shareholder has delivered a written demand for payment, the corporation is to send a statement

to the shareholder "setting forth the opinion of the corporation as to the estimated fair value of the shares." (805 ILCS 5/11.70(c) (West 1992).) *Inter alia*, the statement is to contain either a commitment to pay for the shares at the estimated fair value upon transmittal to the corporation of the share certificate(s), or instructions to the dissenting shareholder to sell the shares on the open market within 10 days of delivery of the statement.

Section 11.70(d) provides in pertinent part that "[u]pon consummation of [the] action [giving rise to the right to dissent], the corporation shall pay to each dissenter who transmits to the corporation the certificate or other evidence of ownership of the shares the amount the corporation estimates to be the fair value of the shares, plus accrued interest." (805 ILCS 5/11.70(d) (West 1992).) Section 11.70(e) provides that if the shareholder does not agree with the corporation's opinion as to value, within 30 days of receiving the corporation's statement of value, the shareholder is to "notify" the corporation in writing of the shareholder's estimate of fair value and interest due. (805 ILCS 5/11.70(e) (West 1992).) Further, the shareholder is directed by section 11.70(e) to demand payment for the difference between the shareholder's estimate and the amount of payment by the corporation. 805 ILCS 5/11.70(e) (West 1992).

Section 11.70(f) provides in pertinent part: "If, within 60 days from delivery to the corporation of the shareholder notification of estimate [*sic*] of fair value of the shares and interest due, the corporation and the dissenting shareholder have not agreed in writing upon the fair value of the shares and interest due, the corporation shall either pay the difference in value demanded by the shareholder, with interest, or file a petition in the circuit court ***, requesting the court to determine the fair value of the shares and interest due." (805 ILCS 5/11.70(f) (West 1992).) Section 11.70(h) states: "Each dissenter made a party to the proceeding is entitled to judgment for the amount, if any, by which the court finds that the fair value of his or her shares, plus interest, exceeds the amount paid by the corporation ***." 805 ILCS 5/11.70(h) (West 1992).

From the proceeding, the statutory procedure clearly contemplates a scenario in which the dissenting shareholder demands payment. The corporation in turn issues an opinion as to the estimated value of the shares and a commitment to pay the shareholder that amount upon the shareholder transmitting evidence of ownership to the corporation. In other words, the statute foresees the shareholder getting an initial amount equal to the value placed on the shares by the corporation. This of course assumes the shareholder will be amenable to transferring evidence of ownership in the shares prior to receiving what the shareholder believes is the full value of the shares.

In any event, if thereafter the shareholder disagrees with this amount, the shareholder informs the corporation of the value the shareholder places on the shares. The corporation then has the choice of either paying the difference between the shareholder's valuation and the amount it has already paid the shareholder, or petitioning the circuit court for a determination of fair value. Following this determination by the court, section 11.70(h) entitles the dissenting shareholder to a judgment representing the amount, if any, the court's fair market valuation exceeds the amount previously paid to the shareholder by the corporation. Again, this assumes the shareholder has previously transferred the share certificates in return for payment of the corporation's estimated value.

In the instant case, the plaintiff made a written demand for payment on December 9, 1993. On December 29, 1993, the corporate defendant offered in writing to pay plaintiff $1,205 for each of her 77 shares, which the corporation deemed to be their fair value. We note the offer did not commit the corporation to pay any amount later determined by a court to be the fair value of the shares in excess of the corporation's estimate of fair value. After receiving this notice, the plaintiff did not tender her share certificates. Instead, on January 26, 1994, the plaintiff delivered a notice to the corporation stating she disagreed with its valuation and giving her estimate that the shares were worth $3,500 each. On March 10, 1994, the corporate defendant filed a counterclaim requesting the circuit court make a determination as to the fair value of the plaintiff's shares.

Thereafter, in April the plaintiff amended her complaint to add a count also requesting the court make a fair value determination. The plaintiff also requested that the corporation be directed to pay her the amount of the corporation's estimated value within 10 days of her delivering her share certificates to the corporation. On the plaintiff's motion, the circuit court subsequently ordered the corporation to pay its estimated value to the plaintiff conditioned on the plaintiff's delivery of her share certificates.

■ Although section 11.70 does not speak specifically to this type of relief, we do not find the circuit court is without authority to enter such a judgment. The statute clearly contemplates a dissenting shareholder receiving an amount equal to the corporation's estimated value prior to any final determination of the fair market value of the shares. In the instant case, had the plaintiff tendered her share certificates immediately after the December 29, 1993, notice, the corporate defendant would have been committed to paying her $92,785. All the circuit court did in this case was place the parties in the position they would have been in six months earlier had the

plaintiff tendered her shares. We do not view the circuit court's action as a "preliminary" finding of value. Section 11.70 was enacted to protect the rights of dissenting shareholders. Such remedial legislation should be construed liberally to effect its purpose. (*S.N. Nielsen Co. v. Public Building Comm'n* (1980), 81 Ill. 2d 290, 410 N.E.2d 40.) Here, the parties have only been placed in a position clearly contemplated by the statute.

■ The defendants' claim that a question of fact remains as to whether the plaintiff was a proper dissenting shareholder is waived in light of the fact that the defendants in the proceedings below treated the plaintiff as a dissenting shareholder. For example, the corporate defendant delivered a notice stating its opinion as to the value of the plaintiff's shares. When the valuation dispute continued between the parties, the corporation filed a counterclaim seeking a judicial determination of value as provided by section 11.70.

■ The defendants claim the plaintiff did not have standing under the statute to bring count IV. The defendants point to the statutory provision providing that it is the corporation which is granted the right to bring an action seeking a judicial determination as to fair value. (See 805 ILCS 5/11.70(f) (West 1992).) They contend there is no comparable provision allowing a shareholder to bring such an action.

Although count IV sought a determination of fair value, we note it also sought to have the corporate defendant pay its estimated fair value in return for tender of the plaintiff's shares. This is what the court granted the plaintiff. This was an exchange expressly contemplated by the statute. (See 805 ILCS 5/11.70(c), (d); see, *e.g.*, *Institutional Equipment & Interiors, Inc. v. Hughes* (1990), 204 Ill. App. 3d 922, 562 N.E.2d 662.) The court did not make a fair value determination and we need not decide in this case whether, and under what circumstances, a dissenting shareholder may commence such an action. As stated above, the court was doing nothing more than placing the parties where they would have stood had the procedures set forth in section 11.70 been more closely followed. Under the circumstances, the plaintiff had standing to seek this limited remedy.

For the foregoing reasons, the judgment of the circuit court of Will County is affirmed.

Affirmed.

McCUSKEY and BRESLIN, JJ., concur.